UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MDT PERSONNEL, LLC,

    Plaintiff,

v.                                                                Case No. 8:10-cv-2545-T-33MAP

CAMOCO, LLC, *et al.*,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

MDT Personnel, LLC ("MDT"), a temporary staffing provider, filed its complaint alleging tortious interference and misappropriation of trade secrets and confidential information as well as seeking injunctive relief against Defendants (doc. 1). Amongst other relief, MDT seeks entry of a preliminary injunction enjoining Defendants from soliciting or recruiting employees of MDT, using MDT's confidential and proprietary business information to solicit MDT's customers, using or disclosing any of MDT's trade secrets or other confidential and proprietary information, and from using, destroying, concealing or disposing of any documents, paper or electronic files or other materials obtained from or belonging to MDT (doc. 6). Defendants oppose MDT's request (doc. 22). After consideration, I recommend MDT's motion for preliminary injunction be denied for the reasons set forth below.[1]

---

[1] The district judge previously denied MDT's request for a temporary restraining order for failure to show a substantial likelihood of success on the merits. MDT persists in its request for a preliminary injunction. The district judge referred the motion for preliminary injunction for proposed findings of fact and a recommendation as to the appropriate disposition of the motion (doc. 7). *See* 28 U.S.C. § 636 and M.D. Fla. R. 6.01.

*A. Facts*

Frank and Anne Mongelluzzi, father and step-mother of Defendants Chris and Andrew Mongelluzzi, owned and operated multiple employee staffing companies. Pursuant to an Amended and Restated Asset Purchase Agreement ("Asset Purchase Agreement"), MDT purchased and acquired an extensive list of assets from Frank and Anne Mongelluzzi's employee staffing companies but specifically excluded the employment contracts from the assets purchased (doc. 1, Exh. A, Article II). Prior to MDT's asset purchase, Chris and Andrew Mongelluzzi worked for the employee staffing companies owned and operated by Frank and Anne Mongelluzzi, but neither Chris or Andrew maintained an ownership interest in any of the companies.[2] Subsequently, Chris and Andrew Mongelluzzi formed an employee staffing company known as Camoco, LLC d/b/a Personnel Response Team ("Camoco"). Currently, Chris and Andrew Mongelluzzi function as managing members of Camoco.

*B. Standard of Review*

The decision to grant or deny a preliminary injunction is within the discretion of the district court. *Carillon Importers, Ltd. v. Frank Pesce Int'l Group Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997) (per curiam). In determining whether a preliminary injunction should issue, the district court

---

[2] According to Chris and Andrew Mongelluzzi, after MDT's asset purchase, MDT employed them for approximately three weeks after which time MDT terminated their employment (doc. 23, Affidavit of Chris Mongelluzzi and doc. 24, Affidavit of Andrew Mongelluzzi). In its motion, however, MDT asserts "[a]lthough MDT retained a significant portion of the Selling Entities' workforce after acquiring the business, it did not hire Frank and Anne's sons, Chris and Andrew Mongelluzzi, both of whom were intimately involved in the services provided by Professional Staffing – A.B.T.S., Inc." (doc. 6, p. 3). Accordingly, on this record, the facts regarding Chris and Andrew Mongelluzzi's employment with MDT are unclear. Regardless, at no point did MDT enter into any restrictive covenants with Chris or Andrew Mongelluzzi.

considers whether the moving party has demonstrated (1) a substantial likelihood of success on the merits; (2) irreparable harm to the moving party unless the injunction issues; (3) the threatened injury to the movant outweighs the potential harm the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not disserve or be adverse to the public interest. *MacGinnitie v. Hobbs Group, LLC*, 420 F.3d 1234, 1240 (11th Cir. 2005). Since a preliminary injunction is an extraordinary and drastic remedy, a district court should not issue a preliminary injunction unless the movant clearly establishes the burden of persuasion as to each of the four prerequisites. *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003).[3]

    *C. Discussion*

The first factor in determining whether a preliminary injunction should issue is whether MDT can show a substantial likelihood it will prevail on the merits of its tortious interference and misappropriation claims. As with its request for a temporary restraining order, MDT has failed to establish it has a substantial likelihood of prevailing on the merits of either claim (doc. 7).[4] To succeed on its tortious interference claim, MDT must show (1) the existence of a business relationship; (2) knowledge of the relationship on the part of Defendants; (3) an intentional and unjustified interference with the relationship by Defendants; and (4) damage to MDT as a result of the breach of the relationship. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814 (Fla. 1994). In Florida, tortious interference with a contract and tortious interference with a business relationship are essentially the same cause of action, except that one involves a contract and the other

---

[3] The tests for a temporary restraining order and for a preliminary injunction are the same. *Parker v. State Bd. of Pardons and Paroles*, 275 F.3d 1032, 1035 (11th Cir. 2001).

[4] Notably, the motion for temporary restraining order (doc. 2) and the motion for preliminary injunction (doc. 6) are identical.

involves only a business relationship not necessarily evidenced by an enforceable contract. *Pilkington v. United Airlines*, 112 F.3d 1532, 1540 (11th Cir. 1997) (*citing Smith v. Ocean State Bank*, 335 So.2d 641, 642 (Fla. 1st DCA 1976)).

Here, MDT contends Defendants tortiously interfered with its contractual relationships with both its clients and employees. As the district judge noted in her Order denying MDT's request for a temporary restraining order (doc. 7), however, MDT fails to establish a likelihood of success on the merits of its tortious interference claim. In support of its claim, MDT states that, in many cases, it has valid sales contracts with its customers and nearly all of the employees targeted by Defendants are subject to valid and enforceable post-employment restrictive covenants, which Defendants were aware of as a result of their prior employment. MDT further asserts that at least one of its customers now does business with Camoco and some of its employees now work for Camoco. MDT failed to provide evidence of a contract entered into with any of the customers or employees lost as a result of Defendants alleged tortious interference and thereby failed to establish the existence of a business relationship under which MDT has legal rights.

The only evidence of record upon which MDT could arguably base its claim is the testimony of Terry Pope, a regional manager for MDT. According to Pope, Chris Mongelluzzi called Pope inquiring as to whether Pope would be interested in working with Mongelluzzi's new company and discussing the non-compete agreement Pope entered into with MDT. Pope declined Mongelluzzi's invitation to accept employment with Mongelluzzi's new company and, therefore, never breached any alleged employment contract as a result of the phone call from Chris Mongelluzzi. Given these facts, MDT cannot satisfy the fourth prong of its tortious interference claim – damage to it as a result of a breach of a contract. *See Ethan Allen*, 647 So.2d at 814. Accordingly, MDT has failed to

4

establish a likelihood of success on the merits of its tortious interference claim.

Similarly, MDT fails to establish a substantial likelihood of success on the merits as to its misappropriation of trade secrets and confidential information claim. In Florida, a trade secret consists of information that (1) derives independent economic value from not being generally known to and not readily ascertainable by others who can obtain economic value from its disclosure or use and (2) is the subject of reasonable efforts to maintain its secrecy. Fla. Stat. § 688.002(4). Misappropriation of a trade secret occurs where a person who knows or has reason to know that the trade secret was acquired by improper means acquires the trade secret of another or where a person who has obtained the trade secret by improper means discloses or uses the trade secret of another without express or implied consent. *See id.* at § 688.002(2). In an action involving trade secrets, the plaintiff bears the burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy. *Am. Red Cross v. Palm Beach Blood Bank*, 143 F.3d 1407, 1410 (11th Cir. 1998) (applying Florida law). Information generally known or readily accessible to third parties cannot qualify for trade secret protection. *Id.* Accordingly, customer lists constitute trade secrets where they are a product of great expense and effort, rather than a compilation of information available to the public, and are confidential. *See East v. Aqua Gaming, Inc.*, 805 So. 2d 932, 933-34 (Fla. 2d DCA 2001); *Kavanaugh v. Stump*, 592 So. 2d 1231, 1232 (Fla. 5th DCA 1992) (finding that valid customer lists can constitute trade secrets where the lists are compiled through the industry of the owner and are not just a compilation of information commonly available to the public); *see generally Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1234 n. 11 (11th Cir. 2009) (indicating the consideration of the mere identity of a plaintiff's clients and the pricing terms as "valuable confidential business information" may not be

sufficient to justify a restrictive covenant).

On this record, MDT has failed to demonstrate Defendants have misappropriated trade secrets or confidential information. MDT contends its customer list constitutes a trade secret because the "customer list contains not only detailed contact information for each of MDT's existing and potential clients, but also significant economic and financial information on these clients such as business history with MDT, projected business with MDT, and various strategies MDT employs with each client" (doc. 3, Declaration of Michael Traina, ¶ 15). *See* Fla. Stat. § 688.002(4)(a). According to MDT, the information contained in the customer list provides MDT with a competitive advantage, or the opportunity to obtain a competitive advantage, over others who do not know or use the information. Additionally, MDT contends the customer list is the subject of efforts to maintain its secrecy, including the use of employee confidentiality and non-compete agreements and limiting employee access to such information on a need-to-know basis. *See id.* at § 688.002(4)(b). Although MDT has demonstrated its customer list may constitute a trade secret under Florida law, it has not shown Defendants misappropriated that information.

MDT relies upon the blanket assertion of Michael Traina, Chief Executive Officer and sole member of MDT, that around the time Camoco was formed, Andrew Mongelluzzi improperly obtained from an MDT employee a copy of the confidential and proprietary customer list of the selling entities MDT purchased (doc. 3, Declaration of Michael Traina, ¶ 15). Traina goes on to assert, based upon "information and belief" rather than his own personal knowledge, that Camoco has and continues to solicit customers of MDT using the misappropriated customer list and has solicited employees and directed its employees to solicit MDT's employees (*id.* at ¶¶ 16-19). MDT offers no other evidence in support of these blanket assertions. In contrast, Chris and Andrew

Mongelluzzi each provide sworn testimony stating they did not compile a list of clients taken from MDT's confidential business information, do not possess a list of clients taken from MDT's confidential business information, have not used MDT's confidential information to solicit existing MDT customers and employees, have not directed any current employee of Camoco to improperly solicit MDT clients or employees to terminate their relationship with MDT, have never obtained a copy of any confidential and proprietary customer list of any of the staffing companies whose assets MDT purchased from Frank and Anne Mongelluzzi, and have never used any confidential and proprietary customer list to solicit clients of MDT (doc. 23, Affidavit of Chris Mongelluzzi and doc. 24, Affidavit of Andrew Mongelluzzi).[5] Given the foregoing, MDT has failed to demonstrate a substantial likelihood of success on the merits of its misappropriation claim.

   *D. Conclusion*

A preliminary injunction is an extraordinary remedy to be used only when a party carries its burden as to the four prerequisites. *Four Seasons,* 320 F.3d at 1210. MDT has failed to carry its burden as to the substantial likelihood of success prerequisite so the Court need go no further in the

---

[5] Moreover, neither Chris or Andrew Mongelluzzi signed restrictive covenants with MDT. During the course of their employment with Frank and Anne Mongelluzzi's employee staffing companies, Chris Mongelluzzi signed an employment agreement with restrictive covenants (doc. 1, Exh. B) and Andrew Mongelluzzi signed an acknowledgment of duty of loyalty and confidentiality agreement (doc. 1, Exh. C). Any restrictive covenants or confidentiality agreements entered into by Chris or Andrew Mongelluzzi with the staffing companies purchased by MDT did not, however, become the property of or enforceable by MDT pursuant to the explicit terms of the Asset Purchase Agreement (doc. 1, Exh. A, Article II, section 2.2). Thus, MDT has shown nothing more than Chris and Andrew Mongelluzzi, as former employees, may have used their contacts and expertise gained during the former employment in their new employment. MDT could not preclude them from utilizing their previously-acquired contacts and expertise in their current employment regardless of the existence of any enforceable restrictive covenants. *Am. Red Cross*, 143 F.3d at 1410 (finding an employer cannot preclude a former employee from using contacts and expertise gained during the former employment).

analysis. Accordingly, it is hereby

RECOMMENDED:

1. MDT's motion for preliminary injunction (doc. 6) be denied.

IT IS SO REPORTED in Tampa, Florida on December 8, 2010.

*/s/ Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).

cc:    The Honorable Virginia M. Hernandez Covington
       Counsel of Record